United States District Court
for the
Southern District of Florida

| | |
|---|---|
| United States of America, Plaintiff, | ) |
| | ) |
| v. | ) Criminal Case No. 21-20290-CR-Scola |
| | ) |
| Manuel Garcia Suarez, Defendant. | ) |

### Order Denying the Defendant's Motion to Suppress

    Defendant Manuel Garcia Suarez asks the Court to suppress physical evidence found when the United States Postal Inspection Service seized and searched two mail parcels without reasonable suspicion or probable cause. (Def.'s Mot. to Suppress, ECF No. 24.) Suarez also moves the Court for a *Franks* hearing. The Government counters that the Court should deny the motion because law enforcement had reasonable suspicion to detain the mail packages and then obtained a search warrant supported by probable cause. (Resp., ECF No. 29.) Additionally, the Government argues, the Court should deny Suarez's request for a *Franks* hearing because his challenges to the affidavit in support for a search warrant are unsubstantiated. The Court held an evidentiary hearing on August 16, 2021 and heard testimony from Postal Inspector Daniel Borja. Having considered the arguments of the parties, the credible evidence and testimony presented at the hearing, and the relevant legal authorities, the Court **denies** Suarez's motion to suppress and request for *Franks* hearing. **(ECF No. 24.)**

    1. **Background**

    This criminal action arises out of the United States Postal Inspection Service's ("USPIS") detention and search of two mail parcels sent from California to Miami. After obtaining a search warrant, law enforcement discovered methamphetamine in both packages. Law enforcement later obtained a tracking warrant to track both packages when they were delivered in Miami. Law enforcement witnessed Suarez and his girlfriend pick up both packages at two different addresses. Suarez's girlfriend identified Suarez as the sender of the packages.

    On April 15, 2021, Suarez was charged by criminal complaint in the Southern District of Florida. (ECF No. 1.) On May 6, 2021, Suarez was indicted on one count of attempting to possess 500 grams or more of methamphetamine with intent to distribute, in violation of 18 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(A)(viii). (ECF No. 12.) On April 22, 2021, after a detention hearing, the Court granted bond and imposed certain conditions of pre-trial release.

    Suarez has filed the subject motion to suppress and request for a *Franks* and evidentiary hearing. (ECF No. 24.) Suarez challenges the propriety of the

Postal Inspector's suspicions to detain both parcels and the sufficiency of the probable cause to support the warrant to search the two parcels. Suarez also claims that the affidavit in support of the warrant contained material misstatements and omissions.

### 2. Summary of the Testimony

#### A. Postal Inspector Daniel Borja

Daniel Borja has been a postal inspector for nine years and has been assigned to the narcotics division for two years. He works with the DEA, HHI, Customs, FBI and local police departments. His role is to identify parcels that may be used to send narcotics illegally through the mail.

In his role, Borja goes through postal databases looking for parcels coming from a particular place, looking for the way it has been paid, the weight, and the particular area to which it is being sent. Once he reviews that data, he requests a digital image of the parcel. After he receives the image, he looks at the names and addresses of the sender and recipient and cross-references with an open-source data base to see if the recipient actually lives at the address. If there are indications of suspected narcotics, he requests that the parcel be pulled and detained.

On April 7, 2021, Borja identified one of the parcels in this case as suspicious and passed the information to the Special Agent Green of the DEA and Agent Richard Harlow of the Postal Service Office of the Inspector General ("USPIS-OG"). This parcel was sent on April 6, 2021. Harlow found out that there was a second, similar package addressed to the same address which had also been sent on April 6 and had been identified as suspicious at a postal facility in Tampa. The inspector from Tampa told Borja's supervisor that he suspected the package contained methamphetamine.

The packages shared the following suspicious traits: they were paid by cash, were sent overnight delivery, had handwritten labels, and were coming from a source city with a destination in Miami. The addresses and names of senders and recipients did not match those in the database. Both parcels were sent from Southern California to Miami. Southern California is typically where many narcotics are shipped to other areas of the country. Southern California is close to the Mexican border. The fact that the package was sent Express Overnight with a handwritten label, from Southern California, and addressed to South Florida would cause a postal inspector to investigate the package.

Borja received custody of the two packages on April 7, 2021 and took them to his office in Miramar. He then asked DEA Special Agent Bill Swidehart to conduct the canine inspection on April 8, 2021. The packages were detained approximately 24 to 36 hours prior to the dog sniff.

On April 8, 2021, DEA Special Agent Bill Swidehart conducted the canine inspection, and each suspicious package was placed in a lineup with five parcels. The suspicious packages were placed in different positions in the two lineups. The canine, Sting, alerted to the two suspicious packages. Sting indicated the presence of narcotics by sitting down next to the suspicious

package.

On April 8, 2021, Borja prepared a search warrant. In his affidavit, he mistakenly wrote the date of March 7 instead of April 7. In his affidavit, Borja wrote that the nominal sender and nominal recipient were not associated with the addresses and the addresses were "fictitious." He did not mean that the address did not exist, he meant to convey that the sender and recipient were not associated with the addresses. Borja later learned that the Defendant lived at the address where the packages were to be delivered. Borja explained that the Defendant's name did not appear on any open-source database associated with the house at which he was living and to which the package was addressed. The open-source database would not show whether anyone was a house guest or was at the address for a short-term stay through Airbnb or a similar company.

The affidavit indicted that the labels had been handwritten. Borja explained that there are many ways labels can be printed out online through the postal service or companies like Pitney Bowes. But, to do so, you would need to use a credit or debit card. In and of itself, the use of hand-written labels is not suspicious. The post office does not track everyone who pays cash. In and of itself, paying cash is not suspicious.

Borja's affidavit states that Sting is a trained narcotics dog and has proven reliable in the past. No specific training or certifications of the canine dog were included in the affidavit in support of the search warrant.

The affidavit also included pictures of the packages in question. The court examined the photographs in the hearing. At least one of the parcels appeared to have excessive tape. The packages were not leaking any materials and there was no odor.

Borja explained that in this case he did not obtain a mail cover prior to applying for a search warrant. A mail cover is an investigative tool used when an inspector believes a crime is being committed using the U.S. mail. Borja explained that mail cover sheets are typically obtained for physical inspections and this case he did not conduct a physical inspection because he obtained images of the packages through the postal database.

Borja did not execute the search warrant in the case. The search warrant was executed on April 12, 2021 and resulted in the discovery of narcotics in both packages. After the narcotics were discovered, Borja placed the information in the Prohibited Mail Narcotics database, which generated a mail cover sheet. No tips from an anonymous source were received by law enforcement.

The Defendant was not given a copy of the warrant and a receipt of the property taken after the search.

### 3. Discussion

Suarez's motion to suppress raises two arguments: (1) Officer Borja did not have reasonable suspicion to detain the two mail parcels, and (2) the search warrant in this case was not supported by probable cause. Suarez also

challenges the veracity of the statements made in support of the search warrant and contends that many statements in the affidavit were false or omitted essential facts and accordingly, there was no probable cause to justify the issuance of a warrant. Suarez requests a *Franks* hearing to test the truthfulness of the assertions of fact raised in the affidavit.

The Government opposes the motion, arguing that it should be denied because Suarez did not have an expectation of privacy in the subject parcels, thus he has no standing. Additionally, the Government argues the detention of the packages and dog sniff were based on reasonable suspicion, and that the search warrant was based on truthful statements and probable cause.

For the reasons explained below, the motion to suppress is **denied**. **(ECF No. 24.)** The Court finds Officer Borja's testimony is credible and that his affidavit did not include intentional false statements or omissions of fact. Moreover, the Court finds that although Suarez had an expectation of privacy in the parcels, their detention was based on reasonable suspicion, was not unreasonable lengthy and the search warrant was supported by probable cause.

### A. Request for *Franks* Hearing and Probable Cause

The Fourth Amendment to the United States Constitution provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "[A] warrant affidavit must set forth particular facts and circumstances underlying the existence of probable cause, so as to allow the magistrate to make an independent evaluation of the matter." *Franks v. Delaware*, 438 U.S. 154, 164 (1978). "Probable cause to support a search warrant exists when the totality of the circumstances allow a conclusion that there is a fair probability of finding contraband or evidence at a particular location." *United States v. Brundidge*, 170 F.3d 1350, 1352 (11th Cir. 1999); *see also United States v. Delgado*, 981 F.3d 889, 897 (11th Cir. 2020) (recognizing that "[p]robable cause is not a high bar…[t]he mere probability or substantial chance of criminal activity is all that is needed").

An affidavit supporting a search warrant is presumed valid. *Franks*, 438 U.S. at 171. A defendant may challenge the validity of a search warrant and is entitled to a hearing to determine same by making a preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and that the allegedly false statement is necessary to a finding of probable cause. *Id.*, *see also United States v. Goldstein*, 989 F.3d 1178, 1197 (11th Cir. 2021). The burden to be entitled to a *Franks* hearing is not lightly met and "the challenger's attack must be more than conclusory…[t]here must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer or proof." *Franks*, 438 U.S. at 171.

Suarez challenges two statements in the affidavit as intentionally false: (1) that the packages return and receiving addresses were fictitious, and (2) that neither the nominal sender or the nominal receiver were associated with the return and shipping addresses.

The Court finds that Borja's use of the word "fictitious" is misleading and as Suarez argues, could suggest that the addresses did not exist. However, this is insufficient to warrant a *Franks* hearing. The Court credits Officer Borja's testimony that what he intended to convey was that the addresses of the sender and recipient did not match post office and open-source databases. Borja did not intend to lie or omit facts in his affidavit.

Suarez's argument is weakened because his proposed interpretation is nonsensical. An individual sending narcotics through the mail would not write fake recipient addresses. This would mean that the packages would not reach their intended destination and valuable narcotics would be lost. More importantly, even if this statement is false on its face, it's significance for probable cause is minimal. The affidavit sets forth additional grounds for probable cause: That the return and recipient addresses did not match the nominal sender or recipient, that one of the packages contained excessive tape, that both packages were sent from an area known for drug trafficking, that both packages were sent Express Overnight, paid for in cash, and that a canine positively alerted each package for narcotics.

Next, Suarez challenges the statement that neither the nominal sender nor the nominal receiver was associated with the return and shipping addresses. Suarez's argument is rejected. The Court credits Borja's testimony that an open-source database would not reveal whether properties are being leased or occupied by third parties through short-term rentals. Accordingly, it is true and consistent with the results of law enforcement's investigation, that neither the sender nor the recipient, nor Suarez, were identified as owning or residing, in other words "associated," with the addresses at issue.

Suarez argues that even if there were no false statements in the affidavit, there was no probable cause for a search warrant. Suarez analyzes each statement in the affidavit for probable cause. Suarez argues "[c]learly there is nothing suspicious about a rectangular shipping box, nor is there anything suspicious about a USPS Priority Mail Express label being attached to a box…" (ECF No. 24 at 9.) He also argues that it is not suspicious that the labels were hand-written or that the shipping fees were paid in cash. (*Id.* at 9-10.)

The deficiency of Suarez's approach is that it treats each fact on its own. The Court agrees that these facts standing on their own would not likely establish probable cause. However, probable cause to support a search warrant exists is based on a totality of the circumstances that allow a conclusion that there is a fair probability of finding contraband. *See Delgado*, 981 F.3d at 897 ("Thus, in considering probable cause, we do not isolate events, but consider the totality of the circumstances to decide whether there was a fair probability that contraband or evidence of a crime [would] be found in a particular place.") (internal quotations omitted). As noted above, the facts supplied in Borja's affidavit and verified at the evidentiary hearing before the Court, thwart

Suarez's argument and demonstrate that the search warrant was supported by probable cause.

Suarez argues there was no probable cause because the affidavit relied on an unreliable positive canine alert. Suarez contends that the affidavit is deficient because it did not articulate the handler or the canine's reliability. (ECF No. 24 at 8.)

The affidavit states that a DEA Task Force Officer and his canine partner, Sting, conducted an open-air sniff on a line containing five parcels, which included the first parcel. Sting provided a positive alert to the presence of narcotics in the first parcel and not to any of the other parcels. The same process was employed for the second parcel and the canine likewise alerted to the presence of narcotics in parcel two and not to any of the other four parcels. The affidavit stated that "Sting is trained in the detention of narcotics and has proven reliable in the past." At the hearing, Borja testified that he is personally familiar with the handler and canine and knows they have been reliable in identifying narcotics. The Court finds Borja's testimony is credible and concludes that the affidavit was not deficient on this ground. *United States v. Nelson*, 309 F. App'x 373, 375 (11th Cir. 2009) (rejecting the argument that the officer's handling of the canine and the canine were unreliable and affirming the district court's acceptance of the officer's testimony regarding how the dog indicated the presence of narcotics, information about the dog's training, and experience with the canine.)

Lastly, Suarez challenges the affidavit for failing to include a mail cover sheet. The Court rejects this argument and credits Officer Borja's testimony that a mail cover sheet was not necessary in this case until after a search warrant was obtained and a physical inspection was conducted.

### B. Expectation of Privacy

Although the question of whether a search or seizure violates the Fourth Amendment rights of a particular defendant is often referred to as "standing," it is more properly subsumed under Fourth Amendment doctrine. *Rakas v. Illinois*, 439 U.S. 128, 139 (1978). The analysis focuses on whether the challenged search "violated the Fourth Amendment rights of [the] criminal defendant who seeks to exclude the evidence." *Id.* at 140. It is immaterial if evidence sought to be introduced against a defendant was obtained in violation of someone else's fourth amendment rights. "Fourth Amendment rights, however, are personal and only individuals who actually enjoy the reasonable expectation of privacy have standing to challenge the validity of a government search." *United States v. Cooper*, 203 F.3d 1279, 1284 (11th Cir. 2000). The defendant has the burden of establishing that her own Fourth Amendment rights were violated by the challenged search. *Rakas*, 439 U.S. at 130 n.1; *United States v. Segura–Baltazar*, 448 F.3d 1281, 1286 (11th Cir. 2006).

With respect to letters or mail, individuals do not surrender their expectations of closed containers when they send the containers by mail or

common carrier. *United States v. Van Leeuwen*, 397 U.S. 249, 251 (1970), *United States v. Smith*, 39 F.3d 1143, 1144 (11th Cir. 1994). Both senders and addressees of packages can reasonably expect that the government will not open the package. *United States v. Villarreal*, 963 F.2d 770, 773-74 (5th Cir. 1992). Individuals may also assert a reasonable expectation of privacy in packages addressed to them under fictitious names. *United States v. Garcia–Bercovich*, 582 F.3d 1234, 1238 (11th Cir. 2009).

The Government avers that Suarez's girlfriend identified Suarez as the sender of the packages. (ECF No. 29 at 5.) Additionally, even though the packages were mailed to a fictitious name, Suarez was the intended recipient. Indeed, Borja testified that he later learned that Suarez resided at the address where the packages were to be delivered. Accordingly, the Court finds that Suarez has standing to bring the subject motion to suppress.

### C. Reasonable Suspicion to Detain

In the Eleventh Circuit, there is no Fourth Amendment violation where officers temporarily detain a reasonably suspicious postal package until it can be inspected by a drug detection dog. *United States v. Bright*, 709 F. App'x 576, 578 (11th Cir. 2017) (citing *United States v. Banks*, 3 F.3d 399, 403 (11th Cir. 1993)). "Reasonable suspicion is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence." *Id.* Reasonable suspicion must be based on "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id.* (quoting *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968)). In determining whether there was reasonable suspicion, courts review the totality of the circumstances of each case to see whether "the detaining officer ha[d] a particularized and objective basis' for suspecting legal wrongdoing." *Id.*

The Court finds that law enforcement had reasonable suspicion to detain both parcels until probable cause could be established. In *Bright*, the Eleventh Circuit found that a postal inspector had reasonable suspicion to detain the mail parcels at issue. *Bright*, 709 F. App'x at 578. The court explained "the postal inspector was correctly suspicious of the fact that both the listed sender and receiver were not associated with the addresses on the package." *Id.* The postal inspector also pointed to a number of other specific facts that caused him to be reasonably suspicious: "handwritten labels on a business package; very heavy taping; an origin city that is a known narcotics source; and waiver of the signature requirement." *Id.* The court concluded that "[b]ased on the totality of these circumstances and giving the postal inspector's inferences due weight, we conclude there was reasonable suspicion to detain the package until a drug detection canine could establish probable cause for the presence of a controlled substance and a search warrant could be issued." *Id.*

Here too, Inspector Borja discovered that both the sender and recipient addresses included information names of the sender and recipient that did not match postal records. The labels on the parcels were handwritten, paid in cash,

and sent from an area known for drug-trafficking. Borja stated that based on his training and experience, narcotics coming from Mexico are commonly repackaged in California and mailed throughout the country using USPS and other shipping carriers. Throughout his experience, Borja also learned that it is common for individuals shipping narcotics to pay in cash to hide the sender's identity and that individuals shipping and receiving narcotics will use fictitious names on labels to avoid being associated with parcels containing narcotics.

Moreover, Suarez's argument that the length of time the parcels were detained prior to obtaining a warrant was unreasonable is misplaced. The United States Supreme Court has indicated that a package in the mail may be detained on the basis of reasonable suspicion to believe it contains contraband pending further investigation directed toward establishing probable cause which will support issuance of a search warrant. *See United States v. Van Leeuwen,* 397 U.S. 249, 251 (1970). In *Van Leeuwen,* the Supreme Court held that no constitutional right was violated by a 29-hour detention of mail packages. *Id.* at 251. The court explained that detention of the packages for this limited time was deemed prudent as opposed to letting them enter the mails and trying to retrieve them later to execute the search warrant. *Id.; see also Garmon v. Foust,* 741 F.2d 1069, 1072 (8th Cir. 1984) (upholding a 24-hour detention of a mail package and noting that there was a stronger basis for detention of the package because law enforcement had probable cause to believe the package contained contraband once a canine reacted positively to it).

The Court finds that the detention of the packages in this case was reasonable and more sensible than sending both packages out for delivery to the fictitious addresses. Here, the parcels were sent on April 6, 2021, they were detained on April 7, 2021, and law enforcement secured a positive canine sniff and applied for search warrant by April 8, 2021. The Court issued a warrant on April 9, 2021 and that warrant was executed on the following business day, April 12, 2021. The Court finds the length of detention to be reasonable under the circumstances. *See United States v. Ganser,* 315 F.3d 839, 842–44 (7th Cir. 2003) (one-day delay for First Class letter prior to obtaining a canine sniff, plus four additional days to obtain a warrant was not unreasonable); *United States v. Gill,* 280 F.3d 923, 929 (9th Cir. 2002) (finding a six-day delay within the constitutional boundary).

### 4. Conclusion

For the foregoing reasons, Suarez's motion to suppress and request for a *Franks* hearing is **denied. (ECF No. 24.)**

**Done and Ordered** at Miami, Florida, on August 18, 2021.

United States District Judge
Robert N. Scola, Jr.